*Bush & Bush, for appellant.*

---

J. M. ROBERTS AND OTHERS *v.* ISAAC MALONE AND OTHERS.

**Judgment—Suit to Settle Estate—Commissioner's Report Confirmed—Injunction Dissolved—Money in Hands by Executor Adjudged to Him—Final Judgment.**

A judgment confirming a commissioner's report of settlement with an executor, disolving an injunction granted in the case and adjudging the money in the hands of the executor to belong to him, is final and confers upon the Court of Appeal jurisdiction to review it.

APPEAL FROM BARREN CIRCUIT COURT.

May 17, 1871.

OPINION BY JUDGE PETERS:

This suit in equity was brought February, 1860, by appellants, the widow and heirs of William H. Malone, deceased, against appellees, by which appellants seek a settlement with Isaac Malone as administrator of W. H. Malone, deceased, and also the executors of Samuel Malone, deceased, who was father of said intestate, William H. and the said Isaac Malone.

After setting out in detail the estate of W. H. Malone, deceased, which came to. the hands of his administrator, including that which he was entitled to under the will of his father, aggregating five thousand dollars, appellants allege that said amount was composed in part of two notes held by their intestate,on said appellee, Isaac, one for $375 and the other for $1,300, executed for part of the consideration for a tract of land sold by intestate to said appellee, both due and unpaid, and were taken into possession by him on the death of intestate, but that he had not placed them on the invoice returned by him, nor accounted for them in any other way.  That he was further indebted to decedent when he died in the sum of $600, the price of a negro man named Sam, also in one hundred dollars for a wagon purchased of decedent, all of which the administrator had failed to return upon an inventory or account for; that the personal estate of decedent if properly, and legally administered, was ample to have paid all his debts, with the cost of administration, and leave the slaves Louisa and her infant child, and Roland, Emily and Amanda for his widow and children; but that the administrator had sold, or was attemting to sell said slaves to A. R. Forest to pay the individual debts of the administrator and to indemnify said Forest for liabilities which he had incurred for said Isaac, and for which he knew the estate of intestate was not responsible; and that he was fraudulently combining with said Isaac Malone to convert said negroes to their own use; that. they were family negroes given to the widow of intestate by her father before the death of her husband; that a sale of them was not necessary to pay his debts.; but that Forest was endeavoring to get them, and to take them south.

Appellants allege that the father of their intestate died before he did, possessed of a large estate, a considerable portion of which he devised to him, all of which went into the hands of appellee as his executor, and they call upon him to set forth the estate, real and personal of said testator, the value thereof, and the amount of estate that their intestate took under the will of his father, for all which they pray that said appellee may account, and for the unpaid price of the land, slave and wagon purchased of intestate, and a full and complete settlement of his account. They allege that his property had been attached by his creditors; that he was insolvent, and therefore prayed for, and obtained an injunction to inhibit him from selling, and taking said slaves until he shall have settled all his accounts as administrator of their intestate, and as executor of his father.

In his answer, appellee, Isaac Malone, states that on the 9th of December, 1858, he made a settlement of his accounts as executor of the estate of his father with the proper officer which settlement had been returned to the Barren County Court, which court had granted him his letters testamontary, and that said settlement was approved and confirmed by said court, without exception, and was correct, and it showed that he then had of the estate of said testator in his hands the sum of $3,560.11, to which was to be added the sum of $2,745, money received by him since said settlement for land sold of said testator, from which he claims several credits should be allowed him amounting in all to about $459.13, two hundred of which he claims for his services, and if the whole of said credits should be allowed, then there would be a balance of $5,845.98, to be divided as he says into eight parts and distributed amongst the devisees of the testator of whom W. H. Malone was one and for whose distributable share he admits he is accountable, but he says said testator directed in his will that his devisees were to account for advancements made to them in his life time, and he was not then prepared to state what would be the precise amount chargeable to him as administrator as aforesaid from that source; besides, he apprehended that a debt of about $200 would have to be paid which was outstanding against his father's estate, which would reduce the estate that amount.

That from the distributable share of W. H. Malone should be deducted the sum of $214.85, the amount of purchase made by him on the 18th of November, at the sale of the estate of testator and for which he gave no note, nor did he ever pay the same.

Of the estate of Wm. H. Malone, he says he caused a true and correct appraisement and sale bill to be made and returned, except as to the negroes; that of the accounts due Neal and intestate resulting from a partnership between them in carrying on a blacksmith's shop on a settlement with Neal he received $113.80, and on accounts on various persons he had received $175.87, and that except the sale bill he says he is chargeable with amount of cash notes, $182.57, on account of partnership with Neal, $103.80, and other accounts of $186.87.

Appellee admits he bought the slave and wagon at the prices set forth in the petition on the 23d of August, 1854, but says he paid for them the same day he made the purchase, having gotten the money from two, Ellers and Huffaker, which they owed him for land and says he took a bill of sale for the negro, which he professes to file, but which is not found in the transcript before us.

He also admits the execution of the two notes for the land as charged in the petition, and says he exhibited them to the appraisers of the estate to be entered upon the inventory; that they had credits put on them by intestate for large amounts paid and he at the time explained to the appraisers that his brother, the intestate, had directed him to make payments to certain of his creditors, and for all payments thus made he would allow him credits; that he did pay to various persons debts of said intestate by his direction in amount equal to the principal and interest on said notes, and others were not, but were admitted by his brother; and they had agreed to meet and settle up the matter, where the notes were to have been delivered up to him, but his brother died before this agreement could be carried out, and upon an examination of the notes and of the list of payments made on them, the appraisers declined to enter them on the inventory and they were not entered. That they had been fully paid off, by paying debts of his intestate and by his directions to persons, a list of whose names with the amount paid to each he proposes to file with his answer.

He assigns as a reason for not filing the notes themselves, that he had bought a suit for the conveyance of the land for which the notes were given against appellants and was advised by his attorneys, Bates and Smith at Glasglow, that it was necssary for them to have said notes to file in said suit; that he put the notes in a sealed letter directed to said attorneys, and placed the letter containing them in the post office, but they never received the letter, nor notes as they informed him, and they are lost, and he is therefore unable to file them in this suit. He states he had sold a slave belonging to the estate of intestate for whose price he is charged on the sale bill, and that it was necessary to have sold those named in the petition to pay the debts of intestate, which he would have accomplished if he had not been presented by appellants. He denies all the charges of fraudulent combination with Forest to sell said slaves to pay his individual debts, or to secure Forest for liability incurred for him, and charges that he had paid of his debts outstanding against the intestate about $6,000, while the assets excepts the slaves named in the petition which came to his hands amounted to $2,142.78, and there were other debts still outstanding. He finally makes his answer a cross-petition against appellants and prays for a sale of their interest in some estate specified in which they have an interest after the death of the widow of the testator, Samuel Malone, and the proceeds applied to pay him.

Forest filed an answer in which he denies all fraud, and fraudulent combinations with Isaac Malone, says the latter had paid debts of intestate to the amount of $3,000 over and above the assets which came to his hand, the greater part of said sum he borrowed, and said Forest was his surety and the balance he loaned him, and in order to enable said administrator to pay him another from whom he had borrowed the money, he (Forest) purchased said slaves from him at the price of $3,000, but was prevented from reducing them to possession, and perfecting his contract by appellants whereby the price of the slaves was lost to the estate, and that appellants are responsible for the said sum to the creditors of said intestate, or to his administrator, who had paid their debts.

The case, after the pleadings were completed, was referred to the master to audit and state the accounts of appellee, Isaac

Malone, as executor of Samuel P. Malone, and also as adminis-
trator of W. H. Malone, who, on the 16th of March, 1866, filed re-
ports in both cases, each of these reports was confirmed, and
the court then adjudged that the administrator had paid out on
debts against the estate of his intestate, $2,702,72 more than the
assets which came to his hands amounted to, and that there were
other debts against the estate amounting to $365.95, which ren-
dered it manifestly necessary that the administrator should have
sold the negroes, and that the injunction prohibiting him there-
from was wrongfully granted, and was then dissolved; and it
is said in the opinion of the judge that Isaac Malone and other
creditors are entitled to their remedy on the injunction bond.

The commissioner, in his settlement of the estate of Samuel
P. Malone, finds in the hands of the executor, $411.86, due to
the estate of Wm. H. Malone, which he adjudges to Isaac Ma-
lone, having first charged his intestate with $214.85, amount pur-
chased at the sale of the personal property of Samuel P. Malone,
which certainly was a proper charge if the evidence sustained
it. But the proof is not in this record of the judgments thus
rendered and the heirs and widow of Wm. H. Malone complain.

But it is insisted by appellees that the judgments are not final
and this court has no jurisdiction. In this view we do not con-
cur. The balance reported by the master in favor of appellee
is in effect adjudged to him. The injunction is dissolved, and the
money in his hands as executor of his father and which would
be due to the estate of his intestate is not only adjudged to him
but is finally disposed of to one of his creditors. We do not
doubt therefore that the judgment is final, and we are satisfied
that it is erroneous and prejudicial to appellants.

Appellee, Isaac Malone, admits that he was indebted to the
intestate for the slave, Sam, $600, for a wagon, $100, and in the
sum of $1,675 evidenced by two notes, but alleges he had paid
them, and in his answer says he has the bill of sale for the ne-
gro, and a list of debts paid off by him for intestate in his life-
time equal or greater in amount than the total of those debts,
but he neither filed the bill of sale, nor the list of debts paid. In
making his report the master failed to charge the administrator
with those claims as he manifestly should have done, and then
credit him by all payments which he showed himself entitled to.

Furthermore, it is by no means certain and we are inclined to think that said eppellee should be charged with $500, which he admitted to Twyman which W. H. Malone had placed in his hands with which to pay off some of his debts; that, however, we leave open for appellee to explain if he can and he certainly should be charged with fifty dollars for the rent of the blacksmith shop for the year 1857.

And the part of Samuel P. Malone's estate not finally disposed of should be wound up by selling the realty if any he left, and Wm. Malone's part ascertained and applied to the payment of any debts outstanding as far as it will go.

For these reasons the judgment is *reversed* and the cause remanded with directions to recommit it to the master and further proceedings consistent herewith.

*Dehoney, Harlan, Newman, for appellant.*

*James, Garnett, for appellee.*